<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CRAIG M., | Civil Action No. 23-3407 (MAS) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Plaintiff Craig M.'s ("Plaintiff")[1] appeal of the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying his request for Disability Insurance Benefits ("DIB") under Title XVI of the Social Security Act (the "Act"). (ECF No. 1.) The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, Plaintiff's appeal is denied.

**I.    <u>BACKGROUND</u>**

In this appeal, the Court must consider whether the Administrative Law Judge's (the "ALJ") finding that Plaintiff was not disabled is supported by substantial evidence. The Court begins with the procedural posture and the ALJ's decision.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

A.      **Procedural History**

On April 26, 2021, Plaintiff filed an application for DIB alleging disability beginning January 1, 2018. (AR 74, 80, 170-74, ECF No. 4.[2]) Plaintiff's claim was denied both initially and on reconsideration. (*Id.* at 91-95, 97-101.) Thereafter, Plaintiff submitted a written request for a hearing before an ALJ. (*Id.* at 102-03.)

On May 12, 2022, the ALJ held a telephone hearing with the parties and an impartial vocational expert. (*See id.* at 39-73.) During the hearing, Plaintiff amended the alleged onset date to December 19, 2018 (*id.* at 17, 46), and thereafter, submitted additional medical evidence to the record (*id.* at 17-18). On July 27, 2022, the ALJ issued a decision denying Plaintiff's DIB application, finding that Plaintiff was not disabled under the Act during the relevant time period. (*Id.* at 14-38.) Plaintiff appealed the decision. (*See id.* at 165-67.)

On May 3, 2023, the Social Security Administration's Appeals Council affirmed the ALJ's decision. (*Id.* at 1-6.) On June 22, 2023, Plaintiff filed an appeal to this Court. (*See generally* Compl. 1, ECF No. 1; Pl.'s Moving Br., ECF No. 5.) The Commissioner opposed (ECF No. 6) and Plaintiff replied (ECF No. 7).

B.      **The ALJ's Decision**

In his July 27, 2022 written decision, the ALJ concluded that Plaintiff was not disabled under the prevailing administrative regulations during the relevant time period. (AR 33.) The ALJ set forth the Social Security Administration's five-step sequential analysis for determining whether an individual is disabled. (*Id.* at 18-20.) At step one, the ALJ found that Plaintiff "did

---

[2] The Administrative Record ("AR") is located at ECF No. 4. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

not engage in substantial gainful activity during the period from his amended alleged onset date of December 19, 2018, through his date last insured of March 31, 2019." (*Id.* at 20.)

At step two, the ALJ determined that Plaintiff had two severe impairments during the relevant time period: generalized anxiety disorder and major depressive disorder. (*Id.*) Through the date last insured, the ALJ found Plaintiff's prostate cancer, sleep apnea, obesity, hyperlipidemia, and irritable bowel syndrome ("IBS") to be non-severe because the impairments did not cause functional restrictions in Plaintiff's ability to perform work-related activities. (*Id.*) The ALJ also acknowledged that Plaintiff alleged to have post-traumatic stress disorder ("PTSD"), but noted that it was not related to a medically determinable impairment during the period at issue because Plaintiff's PTSD diagnosis was made in June 2021, after the date last insured. (*Id.* at 21.)

Despite Plaintiff's several impairments, the ALJ determined at step three that Plaintiff's impairments—specifically, Plaintiff's IBS, prostate cancer, and alleged mental impairments— did not meet or medically equate to one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526 during the relevant time period. (*Id.* at 21.)

The ALJ considered the entire record and determined that through the date last insured, Plaintiff had the residual functional capacity ("RFC")[3] to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> [Plaintiff] could only perform work involving occasional interaction with co-workers and supervisors; no direct contact with the general public; and no work in tandem with co-workers, such

---

[3] RFC is defined as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. §§ 404.1545(a), 416.945; *see Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)). Determination of a claimant's RFC is the exclusive responsibility of the ALJ. 20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e)(2), 416.946(c).

> as on an assembly line. [Plaintiff] was able to understand,
> remember and carry out simple instructions. [Plaintiff] was able to
> perform work involving only occasional changes to essential job
> functions; and was able to make simple work-related decisions.

(*Id.* at 23.)

At step four, the ALJ found that Plaintiff, through the date last insured, was unable to

perform past relevant work. (*Id.* at 32.) The ALJ considered that Plaintiff was 54 years old as of

the date last insured, which is defined as "an individual closely approaching advanced age," and

that Plaintiff has at least a high school education. (*Id.*) The ALJ determined that "[t]ransferability

of job skills is not material to the determination of disability" because Plaintiff is found "not

disabled" under the relevant framework. (*Id.*) Based on the aforementioned factors and Plaintiff's

RFC, the ALJ determined that there were jobs that existed in significant numbers in the national

economy that Plaintiff could have performed. (*Id.*) In doing so, the ALJ relied upon the

testimony of the vocational expert, who testified that an individual of Plaintiff's age, education,

work experience, and RFC would be able to perform representative occupations such as: a dryer

attendant, hand packager, and cleaner. (*Id.* at 33.)

At step five, the ALJ determined that Plaintiff was not under a disability as defined in the

Social Security Act during the period at issue for purposes of Plaintiff's DIB claim.[4] (*Id.*)

## II.    **LEGAL STANDARD**

### A.    **Standard of Review**

On appeal from the final decision of the Commissioner, the district court "shall have

power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

---

[4] The ALJ acknowledged Plaintiff's amended alleged onset date of December 19, 2018
throughout the opinion, but seemingly made a typographical error by not citing to this new date
in the final conclusion. (AR 33 (concluding that Plaintiff "was not under a disability, as defined
in the [Act], at any time from *January 1, 2018, the alleged onset date*, through March 31, 2019,
the date last insured . . . .").)

or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by "substantial evidence." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing the record for substantial evidence, the Court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citation and internal quotation omitted). Even if the Court would have decided differently, it is bound by the ALJ's decision if it is "supported by substantial evidence." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citation omitted).

Even amid this deferential standard, the Third Circuit has explained that the court's review must be a qualitative exercise requiring a thorough examination of the ALJ's decision and the record:

> [The substantial evidence standard] is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary [of Health and Human Services] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion. The search for substantial evidence is thus a qualitative exercise without which

5

> our review of social security disability cases ceases to be merely
> deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (citation omitted). It is, thus, necessary for

ALJs to analyze all probative evidence and set out the reasons for their decisions. *Burnett*, 220

F.3d at 121. If the ALJ has not analyzed all probative evidence and has not sufficiently explained

the weight given to the evidence, the decision is not supported by substantial evidence. *See*

*Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) ("[T]o say that [the] decision is

supported by substantial evidence approaches an abdication of the court's duty to scrutinize the

record as a whole to determine whether the conclusions reached are rational.") (citation omitted).

The ALJ must state both the evidence considered as well as the evidence rejected. *Cotter v.*

*Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject

evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why

probative evidence has been rejected is required so that a reviewing court can determine whether

the reasons for rejection were improper." (internal citation omitted)).

## B.     Establishing Eligibility for DIB

To be eligible for DIB under the Act, a claimant must be unable to "engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A). For

purposes of the statute, a claimant is disabled only if his physical or mental impairments are "of

such severity that [he is] not only unable to do [his] previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is

one "that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Administrative regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(4). For the first step, the claimant must establish that he has not engaged in any substantial gainful activity since the onset of his alleged disabilities. *Id.* § 404.1520(a)(4)(i). For the second step, the claimant must establish that he suffers from a "severe . . . impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). The third step requires that the claimant provide evidence that his impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant demonstrates that he suffers from a listed impairment or that his severe impairment is equal to a listed impairment, he is presumed to be disabled and entitled to DIB benefits. *Id.*; 20 C.F.R. § 404.1520(d). If he cannot so demonstrate, the eligibility analysis proceeds to step four. *See* 20 C.F.R. § 404.1520(e).

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv). In doing so, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. *Id.*; SSR 96-8p, 61 Fed. Reg. 34474 (Jul. 2, 1996). Then, at step four, the ALJ determines whether the claimant's RFC permits him to resume previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant's RFC permits other employment, the claimant is not "disabled" and thus not entitled to DIB benefits. *Id.*; 20 C.F.R. § 404.1520(f). If the claimant cannot continue in this line of work, the analysis proceeds to step five. *See* 20 C.F.R. § 404.1520(f). Importantly, the burden of persuasion rests with the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009).

At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work consistent with his medical impairments, age, education, past work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560. If the Commissioner cannot satisfy this burden, the claimant will receive DIB benefits. *Id.* § 404.1520(g).

## III.   DISCUSSION

Plaintiff alleges that the ALJ erred in his decision denying DIB because: (1) the ALJ failed to properly evaluate the medical evidence in determining Plaintiff's RFC; (2) the ALJ failed to properly evaluate Plaintiff's testimony; and (3) the ALJ relied on a flawed hypothetical question to the vocational expert. (*See* Pl.'s Moving Br., ECF No. 5.) The Court considers each argument below.

### A.   Plaintiff's RFC

Plaintiff argues that the ALJ's findings as to his mental impairments are erroneous, and therefore the ALJ's determination of Plaintiff's RFC is flawed. (*Id.* at 2 n.4, 14-22.)

First, Plaintiff argues that the ALJ erroneously determined that Dr. Burgess's opinions[5] are "not persuasive" because the ALJ "provided no meaningful discussion of how he considered" Dr. Burgess's explanations regarding Plaintiff's mental limitations. (*Id.* at 15-16, 18.) In turn, Plaintiff asserts that the ALJ failed to consider Dr. Burgess's medical opinions based on relevant factors such as: (1) supportability; (2) consistency; (3) length, frequency, and nature of treatment; and (4) area of specialty. (*Id.* at 19-20.)

---

[5] As relevant here, Dr. Burgess opined that Plaintiff had major depressive disorder and chronic PTSD. (AR 25.) Dr. Burgess opined on March 2, 2021 that "as a result of his impairments/treatments, on average, [Plaintiff] was likely to be absent from work more than three times per month"; on June 23, 2021, he also opined that "based on [Plaintiff's] . . . psychological functioning," Plaintiff "was incapable of working." (*Id.*) On March 15, 2022, Dr. Burgess made the same conclusions as to Plaintiff's ability to work. (*Id.* at 26.)

8

Here, the Court disagrees because the ALJ did in fact consider such factors. The ALJ considered the three opinions by Dr. Burgess—mental impairment questionnaires from March 2, 2021 and March 15, 2022, and a June 23, 2021 letter. (AR 25-26.) As to Dr. Burgess's specialty and the length and frequency of treatment, the ALJ recognized that Dr. Burgess was Plaintiff's treating psychologist since June 2020 (*id.* at 286) and that Plaintiff was seen on a weekly basis for about a year, beginning June 23, 2020 until at least June 22, 2021 (*id.* at 438). Ultimately, the ALJ determined that the three opinions by Dr. Burgess were "not persuasive, as they are not supported by or consistent with the medical evidence of record."[6] (*Id.* at 31.) As the Third Circuit makes clear, evidence is not "substantial if it is overwhelmed by other evidence." *See Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (citing *Cotter*, 642 F.2d at 706). Here, the ALJ properly determined that Dr. Burgess's findings are not supported by substantial evidence because there is countervailing evidence in the record.

Moreover, the Third Circuit has found that evidence is not substantial "if it really constitutes . . . mere conclusion." *See id.* In his decision, the ALJ found that Dr. Burgess's

---

[6] Relatedly, the ALJ noted that "Dr. Burgess had performed no objective testing" for the March 2, 2021 and the March 15, 2022 questionnaires. (AR 25-26.) Certainly, "[i]n contrast to some physical impairments, which can be verified or discounted solely by reference to reports of objective tests, mental impairments are generally identified on the basis of a psychiatric professional's interactions with an impaired individual." *Badger v. Astrue*, No. 11-1145, 2012 WL 1893581, at *5 (W.D. Pa. May 24, 2012) (citing *Haisley v. Sedgwick Claims Mgmt. Servs., Inc.*, 776 F. Supp. 2d 33, 50 (W.D. Pa. 2011)). Yet, clinical notes from other examinations with Drs. Thompson, Rizkala, and Kim during the same relevant time period do not identify any significant mental health issues or limitations, especially related to PTSD or major depressive disorder, as opined by Dr. Burgess. (AR 317, 377, 411, 419.) On July 16, 2020, Plaintiff's visit with Dr. Leonti only indicated that Plaintiff takes medication for anxiety and depression, but Dr. Leonti did not opine that Plaintiff has significant mental limitations. (*Id.* at 294.) On January 28, 2022, Dr. Thompson similarly indicated that Plaintiff had generalized anxiety disorder but did not otherwise flag any significant mental limitations. (*Id.* at 582.) In short, the treatment notes in the record do not corroborate Plaintiff's assertion that he had significant mental limitations during the relevant time period.

opinions equate to mere conclusions because they are not supported nor consistent with the rest of the record. The ALJ determined that Dr. Burgess's opinions "were based on treatment, which started more than a year after [Plaintiff's] date last insured[,]" and that "there is no basis [in Dr. Burgess's] opinions [to conclude] that [Plaintiff] could not complete a workday, accept criticism[,] or would need to be absent more than three times a month." (AR 31 (noting also that the "finding of disability is reserved to the Commissioner").) Further, the ALJ noted "Dr. [Burgess] admitted that the opinions that [Plaintiff] had these limitations and restrictions since January 1, 2018, were based on the *subjective* reports of [Plaintiff] [and conversations with Plaintiff] as no objective testing was performed . . . ."[7] (AR 25, 26, 31, 432 (emphasis added).)

Second, Plaintiff argues that "the ALJ erred in rejecting opinions from Dr. Burgess because the psychologist started treating Plaintiff after the date last insured."[8] (Pl.'s Moving Br. at 18-19.) As mentioned above, however, the ALJ did not reject Dr. Burgess's opinion solely for having treated Plaintiff after the date last insured. Instead, the ALJ determined that Dr. Burgess's opinions merely consisted of unsupported conclusions, which are "reserved to the Commissioner." (AR 31.) *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.").

---

[7] Particularly telling is that Dr. Burgess's mental impairment questionnaires are forms which largely require him to merely "'check a box or fill in a blank,' rather than provide a substantive basis for the conclusions stated . . . ." *Doty v. Colvin*, No. 13-80, 2014 WL 29036, at *1 n.1 (W.D. Pa. Jan. 2, 2014) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)). The Third Circuit has found that such form reports "are weak evidence at best." *Mason*, 994 F.2d at 1065.

[8] Indeed, a court may consider evidence generated after a plaintiff's date of last insured as the evidence may "shed light on [his] condition during the insured period." *Jones v. Comm'r of Soc. Sec.*, No. 17-4691, 2023 WL 7180651, at *6 (D.N.J. Nov. 1, 2023) (quoting *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 688 (3d Cir. 2020)).

Lastly, Plaintiff argues that the ALJ "impermissibly interpreted the medical data into his pre-conceived mental RFC that he created for Plaintiff" by "relying on [his] lay judgment." (Pl.'s Moving Br. 21-22.) Not so. The ALJ determined Plaintiff's RFC based on Plaintiff's generalized anxiety disorder and major depressive disorder, as well as evidence in the record including, but not limited to: (1) April 2018 clinical notes from Integrated Medicine Alliance; (2) medication prescribed to Plaintiff during the period at issue; (3) a September 2019 letter from Dr. Thompson confirming Plaintiff was "under his care for depression and anxiety"; and (4) December 2018 clinical notes from Urology Care Alliance indicating that Plaintiff was "treated for anxiety and depression." (AR 24.) Plaintiff's argument that the ALJ devised Plaintiff's RFC without support is meritless.

In sum, the Court finds that substantial evidence supports the ALJ's RFC finding for Plaintiff.

### B.    Plaintiff's Testimony

Next, Plaintiff argues that the ALJ erroneously discounted Plaintiff's testimony regarding his symptoms and impairments without providing sufficient reasons for doing so. (Pl.'s Moving Br. 24-25.) As such, Plaintiff avers that "[t]his lack of explanation requires remand." (*Id.* at 25 (citations omitted).)

While "subjective complaints of pain must be given serious consideration, . . . pain alone cannot be the basis for a finding of disability." *See Alward v. Comm'r of Social Sec.*, No. 08-3373, 2009 WL 4798263, at *7 (D.N.J. Dec. 8, 2009) (citations omitted). Instead, "the subjective complaints of pain must be accompanied by objective medical evidence showing the existence of a condition that reasonably could be expected to produce the alleged symptomalogy

11

and support a finding of disability." *See id.* (citations omitted) (noting that "[i]t is [plaintiff's] burden to prove that her subjective complaints of pain are substantiated by medical evidence.").

Here, the ALJ determined that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms *are not entirely consistent with the medical evidence and other evidence in the record* for the reasons explained in this decision." (AR 30 (emphasis added).) Specifically, the ALJ cited to the fact that Plaintiff testified during the hearing that he "was able to perform household chores and selfcare activities independently[,]" such as mowing the lawn and sweeping. (*Id.*) Plaintiff also testified that "he spent his time walking, watching videos[,] and listening to motivational speaking" but "could not work because of his anger." (*Id.*) In particular, the ALJ took "note that [Plaintiff] did not mention his mental conditions as limiting his going out" notwithstanding the fact that Plaintiff testified that "he did not socialize as much as he used to" and that "if he became agitated, he had a hard time getting past emotions." (*Id.*) In sum, the ALJ determined that Plaintiff was "capable of performing work at all exertional levels" but noted limitations to his RFC. (*Id.* at 31.) The RFC limitations were based, in part, on Plaintiff's subjective testimony, such as that he "could only perform work involving occasional interaction with co-workers and supervisors; no direct contact with the general public; and no work in tandem with co-workers . . . ." (*Id.*)

The ALJ properly indicated what evidence he relied upon in reaching his findings, as well as the evidence that he rejected, and the reasons why. (*Id.* at 23-31.) In short, his evaluation of Plaintiff's subjective testimony is supported by substantial evidence, and therefore, the Court concludes that the ALJ did not err with respect to evaluating Plaintiff's testimony.

### C.      Flawed Hypothetical Question to the Vocational Expert

Finally, Plaintiff argues that, because the ALJ's RFC determination for Plaintiff is not supported by substantive evidence, the hypothetical question posed to the vocational expert was also necessarily flawed. (Pl.'s Moving Br. 26-27.) In turn, Plaintiff argues that had it not been for the ALJ's flawed RFC determination, Plaintiff would have been found disabled under the Act. (*See id.*) As discussed in this Opinion, however, the ALJ's RFC determination was not flawed and therefore Plaintiff's argument fails.

## IV.     <u>CONCLUSION</u>

In light of the above findings, the Court finds that the ALJ's decision that Plaintiff was not disabled, as defined in the Social Security Act, relied on substantial evidence. The Court, accordingly, affirms the Commissioner's final decision and denies Plaintiff's appeal. An Order consistent with this Memorandum Opinion will be entered.


MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE